Good afternoon, Your Honor. My name is Hardeep Rekhi of the Rekhi Law Firm. I represent Mr. Swinnie, the appellant, plaintiff in this matter. This appeal is from a district court decision granting summary judgment against my client, Mr. Swinnie. We argue that the court erred in granting summary judgment on the issues of retaliation, race discrimination, disability discrimination, and hostile work environment. I'll begin with the retaliation claim. Mr. Swinnie made multiple claims of retaliation. The first I'll address is the petitions. There were two petitions which the district court recognized as disparaging that were brought against Mr. Swinnie after he made an EEO complaint. The basis of those petitions were the EEO complaint admittedly by Ms. Mosher, Mr. Swinnie's supervisor. We believe that the district court erred in finding that the petitions were not retaliatory. We believe that under Burlington, Northern, Santa Fe v. White that an adverse action is not necessary, but rather in the context of retaliation, an adverse action is something that would reasonably dissuade an employee from bringing a claim or charge of discrimination. We believe that the first petition and the second petition, and also both of them combined, would reasonably dissuade an employee from bringing a charge of discrimination. Counsel, let me make sure I understand the ground rules on this precedent. So if we're dealing with retaliation, we don't ask if it's so severe and pervasive as to change the terms of employment, but we ask would a reasonable person be deterred from taking protected action like making an EEO complaint if they got this? I believe that's exactly correct. I think under Burlington, Northern v. Santa Fe, under the White case, the Supreme Court said that the adverse action is different than when you're looking at it under a hostile work environment or you're looking at it under race discrimination. The adverse action is adverse when a reasonable employee would, a quote from the case, is a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. So how would these petitions in which Ms. Mosher or whoever, the woman who handed out the work, gets other people to sign, how would that kind of group action deter a reasonable person in Mr. Swinney's shoes from complaining? I think that it would deter a reasonable person from complaining because other employees view that action that could be taken against them. If I complain, somebody will create a disparaging petition about that individual and will have second thoughts about whether or not they should support such a charge or file such a charge in the first place. It creates animosity in the workplace. These weren't just, the district court recognized that these were disparaging petitions, one that the first one referenced whether or not Mr. Swinney had been making sexually lewd remarks in the workplace and I think implanting that on employees. Now it wasn't that this petition was just signed by one person. It was passed around the entire work area and his coworkers were affected and saw this light. So I believe that it is, I think that it does dissuade other people from either supporting Mr. Swinney's claim or somebody else's claim or charging or making a charge themselves. What was the evidence as to, what did the district court find as to Ms. Mosher's position? Did he find that she was a supervisor? She played down in the briefs. She was the one who did assign the work. I don't know if the district court came out and said whether she was a supervisor. The district court did have an issue with whether or not it would be imputed on the employer. I would say that even if Ms. Mosher's conduct couldn't directly be imputed on the employer, it is imputed on the employer where the employer knew of the conduct under Hawkins and knew of the conduct and allowed the conduct to continue. Here we have evidence in the record that the director of the Department of Logistics, Mr. Humphreys, was aware of the petitions and took no action, not only after the first petition, but took no action after the second petition either. And by no action, no reprimand, no discipline, nothing to Ms. Mosher. And that's also in the record that she wasn't reprimanded in any way. I think that you can see that that did have an effect because after the first petition, the second petition was drafted, so it continued. And I would argue that tolerating it and condoning the behavior imputes liability on the employer. An employer can't simply allow their coworkers to do the dirty work. At least I think I understand your argument on the petitions. What are the other things that you think were improper retaliation? I believe that the increased scrutiny was also improper retaliation. When Mr. Salinger, after Mr. Sweeney was transferred to 525, Mr. Salinger, which was a different mission, Mr. Salinger went to the supervisor of that mission and requested information that that individual thought would be disparaging to Mr. Sweeney's employment. Again, kind of looking for reasons to terminate or end Mr. Sweeney's term or not rehire him or write him up. And I believe that the case on that point is Yartoff v. Thomas. In addition to that, I think being assigned increased blitz shifts and seeing a decrease of hours was also retaliatory that occurred after that. Well, that summary of hours and so forth that Mr. Sweeney prepared, did that take into account when he was on vacation or otherwise unavailable for work? The summary of hours that we looked at took into account, I mean, it showed a time period from June 24, 2006 to September 2006. With respect to that, there's a dispute as to what would be available. I think witnesses, I know that witnesses testified that even when Mr. Sweeney was available, he was not placed on the schedule. Ms. Clark specifically testified to that. So because Ms. Mosher in this case is the person that's in charge of providing the hours and also in this situation is the discriminator or harasser or retaliator, I believe that looking at whether or not he was available is an issue of fact, whether he was indeed available or not. There's conflicting testimony. The defendants will say that he wasn't available, whereas Ms. Clark would say that she was available and Mr. Sweeney also said that he was available for work, had fewer hours, but still was not placed on the schedule. I thought I read in your brief the argument that if he was on vacation, he's on vacation because he wasn't getting the work. I think that he was on vacation for part of that period. There was also issues of whether or not he was available. The reason that he was, Mr. Sweeney contends that he was available. The defendant argues that he wasn't available. Ms. Clark says that also testified that he was available but wasn't put on the schedule. So at the very least, I believe that's an issue of material fact that's in dispute, whether or not he was reduced in hours, taking those different issues into consideration. Is that your discrimination claim? The discrimination claim is that he was reduced hours, yes, Your Honor. Well, doesn't that chart also show that some similarly situated individuals received fewer hours than Mr. Sweeney? Over that time period, I don't believe that chart shows that some individuals received fewer hours. I think the chart shows that every other individual on that chart received 20% to 34% more hours than he did over that period of straight hours. Of overtime hours, I think it's considerably more, 20% to 200% more. I have a question about in your opposition, you indicated three additional retaliatory acts having to do with the workers' interference with Sweeney's workers' compensation claim and then Carlo Salinger's interference with the workmen's compensation claim and then Salinger's attempt to obtain false statements. What happened? The district court didn't seem to address those. I don't believe the district court did address those. Mr. Salinger's going and seeking these statements and watching Mr. Sweeney more closely, I believe, is increased scrutiny and was argued in my response to the motion for summary judgment but not taken by the district court. But what exactly was the retaliation as to the workers' compensation claim? The workers' compensation claim retaliation is that Ms. Mosher sought out individuals to contest his workers' compensation claim, that she had not done it before for anybody else. The evidence shows that she had not ever done this before for anybody else but did seek out individuals that were not there. Mr. Sweeney denies that those individuals were even present at the actual event that led to his injury. All right. Well, you're over your time. Thank you very much, Mr. Rickey. Thank you, Your Honor. And we'll hear from Ms. Mitterman in a minute. Good afternoon. May it please the Court, Counsel. Jamie Mitt is appearing on behalf of the government in this case. Your Honors, the government acknowledges that employment decisions should be free from discrimination. In this case, however, the district court correctly found that Mr. Sweeney had not been discriminated against. Mr. Sweeney had basically articulated four areas of concern. Initially, the first one was whether his hostile environment claim, and he had alleged below a failure to accommodate claim whether they had been properly exhausted. It seems today that the failure to accommodate claim might have disappeared. He hasn't indicated anything about it. His second area of concern is whether he was disparately assigned hours based on his race. Third was whether he was retaliated against. And the main areas of retaliation that had been fleshed out were his complaint about the petitions. He was also indicating that he was retaliated when he was reassigned to drive buses and that he was retaliated against when his term appointment was not renewed. The fourth area was whether or not Mr. Sweeney was discriminated against based on disability when his term was not renewed. I will address these areas in order unless the court prefers me to focus on one. I don't know if you prefer me to focus on the retaliation since Mr. Sweeney raised that first. Does the court have a preference? You know, we've got three judges. Everyone may view it differently. But I'll just say from my point of view, I thought the court had some good basis to reject the discrimination claim based on reassignments that seemed to be based on his own doctor's advice about what he could do. But the retaliation claim seems really like a tough one for a summary judgment when we have these petitions. And also, it seems to me that the petitions would raise an issue of fact under the standard that was argued. If you agree, that's the standard. And also, it looked like the district court didn't address some of the retaliation claims. I think the district court looked at the list that had been plaid below. And as the court knows, the EEO complaint is what defines the parameters of the district court complaint. And the court looked at some of the allegations for retaliation and indicated that they didn't rise to the level of an adverse action. And the court specifically addressed the ones that could be arguably considered to be adverse actions. Would the government agree that the question whether the petitions, for example, should be considered an adverse action is whether those types of petitions would lead a reasonable person in Mr. Swinney's position not to take protective action? I think that is, in general, the standard for retaliation, Your Honor. But the courts also looked to... If that's the standard, then, you know, why isn't there an issue of fact whether he was retaliated against for bringing his EEO complaint when there's this sort of group ostracism orchestrated by Ms. Mosher? And maybe that's not a fair characterization. But at least it might be argued that the facts could be read that way. For it still to rise to the level of an adverse action under Burlington, it still, although with retaliation it doesn't have to affect the terms and conditions of employment, it still, and Burlington says, it still has to cause a material disadvantage. There still has to be some showing of an injury or harm so that then you could say that a reasonable person might be dissuaded from engaging. Let's say there was some protected action that I wanted to take. I was going to complain about something about the courthouse. And that when I did so, then the chief judge got all the other judges to sign a petition saying I was, you know, really dumb and stupid to do that. You know, would that deter me from making that kind of complaint? Probably not. It would not deter you, Your Honor. I'm sure your fortitude would be such that you would go ahead. Yes, under certain circumstances. It might deter a reasonable person. That could possibly, depending on what the petition was. The government would argue in this case that the petition that they're talking about, you know, first of all, the anti-retaliation provisions are directed normally at employers. Employers are not liable for co-worker retaliation unless they condone or encourage it. They can do anything. And Mosier was in a position of authority in terms of assignment of hours. She says that in her case. Mosier was the scheduler. Right, but assigning hours, which is, you know, when you're getting paid by the hour. That's sort of an important person. And no one stopped her from doing it. I think there's inferences that can be drawn from those facts. And she did it twice, which is. . . No, the testimony is not exactly that. The first petition was the one that Mosier was involved with. And Mosier indicated that the petition said that Mr. Sweeney made lewd comments and engaged in sexual banter or something to that effect. That petition was signed by five or six people. It might have circulated for a couple of days, and then it was destroyed. It was not out there. The second one she did not do. To me, that leads to the exact opposite inference of what you want us to draw from that, her lack of involvement, which is that by being involved in that first one, it only encourages other people to circulate petitions, ostracize, treat Mr. Sweeney worse, which would tend to most people, maybe not Judge Gold, that if you're being subject to heightened scrutiny and examination, it tends to discourage you from engaging in that kind of behavior. But the genre is conflating different issues together. There is no indication that Mr. Sweeney was subjected to heightened scrutiny. The petition, you know, and employers are in a difficult situation. Employees have a right to do a petition if they think that there's some issue. That first petition didn't circulate very widely, and it was destroyed after a few days. That goes to the point that it wasn't circulated widely, it was only a few days, goes to the level of discouragement. It doesn't go to, I mean, it's still, whether it was circulated for three days or two days or one day or five hours, is an act that someone, a reasonable finder of that, could find was retaliatory. I would argue on that, Your Honor, that that petition in and of itself, you know, and every petition might be different depending on what they say and what the effect of the petition is. There still has to, it's not just the petition, the making a petition. You still have to show that the petition then, which is the adverse action that we're talking about, two things. You have to show that it materially, you still have to show that it materially disadvantaged Mr. Sweeney and that it caused an injury and harm. I mean, there still has to be that. You can't just jump to the... I don't necessarily disagree with that argument. Let's assume that's right. But still, it's a summary judgment here. So don't we, in a summary judgment, don't we still have to give Mr. Sweeney, you know, every inference from the facts? So although maybe it didn't hurt him that much, maybe he should view a petition the way I would view one of the Chief Judge Orchestra. I do not really care. But, you know, isn't he entitled to go to a jury with a jury instruction that says they have to decide, not me or you or the other panel judges, but the jury has to decide whether a person in his position would be deterred from protected action and whether he suffered such an injury. I think there still has to be some testimony and evidence on the record that is not just purely speculative, that Mr. Sweeney actually did suffer some material disadvantage, and this is out of the Burlington case, and that he actually suffered an injury and harm. And then the second analysis on that is that employers aren't held liable for co-worker actions, which this is, unless they've condoned or encouraged it, because as Burlington says, the anti-retaliation provisions are directed at employers normally. And in this case, there is no evidence on the record that it was by management condoned or encouraged. In fact, they didn't see it. Under Fielder, the standard is tolerated. Excuse me? Under Fielder, the standard is tolerated, not condoned or encouraged. Well, even if the standard is tolerated, Your Honor, there's no evidence on the record that management tolerated it. The evidence is that at the time, they didn't see it. And we have to separate out the two petitions. Okay, so you're out of time, but again, the problem is it's summary judgment. We have to take the facts and the light in this variable to the non-moving party. You do have to take the light, but still the facts have to be materially and not speculative. There has to be some sort of material evidence there. Is there any Ninth Circuit precedent or other circuits that sheds light on whether, like a schedule or like Ms. Mosher, should be considered equivalent to management as opposed to just being another worker? No, I don't believe so, Your Honor. Like, you know, taxi cab companies. If someone who assigns to work for a health care agency, they'll send the people out. And, you know, is the person who does that the scheduler? Are they part of management? Not usually, to my experience. I can only fall back on the airlines experience, the people scheduling. The people that schedule pilots and flight attendants are not supervisors or managers over those people. They're individuals just scheduling the hours. Same with Kenmore Air Service. There is a low-level employee scheduling the hours. They're usually not managers. There is no evidence on the record here. In fact, the evidence is that Ms. Mosher had no authority to discipline. She was not involved in evaluating any of the drivers. She couldn't hire. She couldn't fire. She was the scheduler. There was a first-line supervisor, a second-line supervisor, and then the head of the whole department. So the government, and I take this to be your position, that there is no authority saying we should consider a scheduler to be management. So, therefore, look at whether the non-scheduler management, the real managers of the company, whether it could be inferred reasonably from the record that they tolerated the conduct. Well, the first-line supervisor has said on the record that he wasn't aware of that petition. He did not see it. The petition that we're talking about that Ms. Mosher was involved in, the second petition she was not involved in. All right, Chancellor, you're well over your time. Thank you. Thank you very much. Do you have something quick you want to say? The same question that I asked your distinguished adversarial colleague, is there any precedent about whether a supervisor, or rather whether a scheduler who has a lot of real-world impact on the workers should be considered to be a part of management, or are they just non-management with a scheduling function? I haven't come across any particular precedent that would say that a scheduler is or is not management. I think generally the term supervisor and management is oftentimes left up to the employer, and you have to take a look at what that authority is in that context, whether or not they have the ability to do something to the employee. In this case, cut hours. Thank you. All right. Thank you, Counsel. Sweeney v. Guerin will be submitted.
judges: Mills, Wardlaw, Gould